### BRIGHAM *against* TILLINGHAST and others.

An assignment by an insolvent debtor of his property to trustees for the benefit of his creditors, which authorizes the trustees to convert the property into "money or *available means*," is fraudulent and void as against the creditors of the assignor.

Authorizing the trustees to convert the property into *available means* as contradistinguished from money, is equivalent to empowering them to sell it on credit.

Brigham *v.* Tillinghast, 18 Barb. 618, reversed.

*THE action was commenced in March, 1852. The plaintiff had recovered a judgment against the defendant, Clark Tillinghast, upon which an execution was returned unsatisfied, and the action was brought against him and the other defendants to set aside a general assignment of his property made to them in December, 1851, on the ground that it was fraudulent and void as against the plaintiff and the other creditors of Tillinghast. A copy of the assignment was set out in the complaint. It recited that Tillinghast, the assignor, was " owing debts to a large amount to different individuals, which he was then unable, as he believed, fully to discharge, and some of which, from their confidential nature, were entitled to a preference over others; and for the purpose of carrying into effect his intention of applying his property to the payment of his debts in a fair and equitable manner and without sacrifice," he thereby granted unto the other defendants all his estate which consisted of real and personal property described and referred to, authorizing them to reduce the same to possession, to collect all debts and " to compromise all bad and doubtful claims." The assignment then proceeded as follows: " Provided always, that the above grant, bargain, sale, assignment and conveyance of all the real and personal estate of the said party of the first part is made to the said parties of the second part *in trust,* for the uses and purposes

[*216

following, to wit: The said parties of the second part shall forthwith take possession of all and singular the premises aforesaid, and shall, as soon as practicable and expedient for the best interests of all concerned and interested herein, convert all and singular the premises and estate aforesaid into money *or available means*, and after deducting the reasonable costs and charges of executing the trusts herein mentioned, shall pay and apply *the moneys and means* arising therefrom in manner and form following, to wit: "To the satisfaction of all the debts and liabilities of the assignor with certain specified priorities and preferences in the *payment of the same. The defendants, by their answer admitted the execution of the assignment and that the grantees therein held property under it, but they denied all fraud in fact and insisted that the assignment was valid. The cause was tried at the Madison county circuit in October, 1852, before Mr. Justice Crippen, who decided that the assignment was void upon its face as against the plaintiff, and gave judgment against the defendants.   On appeal the judgment was reversed and a new trial ordered by the supreme court at a general term held in the 5th district. (*See* 15 *Barb.*, 618.)   The cause was again tried at a circuit court held in Madison county, by Mr. Justice Gray, who, in accordance with the decision of the court at general term, decided that the assignment on its face was valid as against creditors, and ordered judgment in favor of the defendant; the plaintiff duly excepted.   The judgment was affirmed by the court at a general term held in the 5th district, and the plaintiff appealed to this court.   The case was submitted on printed briefs by

*D. Brown*, for the appellant.

*Z. T. Bentley*, for the respondents.

DEAN, J.   The question to be decided is whether the assignment of Clark Tillinghast is void on its face.   The assigned property consists of real and personal estate which is conveyed to trustees to be disposed of by them and the proceeds applied to the payment of the debts of the assignor, in the order named in the instrument.   By our laws trusts may be created to sell property for the payment of debts.   But these trusts, when created and declared, must be capable of being executed in the manner specified in the instrument creating them without contravening any statute or settled principle of the common law.   One of these, which restricts and controls the creation and execution of trusts to *sell property for the benefit of creditors, is that provision forbidding sales, assignments and [*218 transfers made for the purpose of hindering or delaying creditors in the collection of their debts.

The right of the assignor to authorize his trustees to convert his property into "available means," is the only question which I propose to examine.   It has been held by this court in *Nicholson* v. *Leavitt* (2 *Seld.*, 510), that an assignment which authorized the assignees to sell the assigned property on credit, was fraudulent and void.   Does this assignment come within the principle of *Nicholson* v. *Leavitt*?   "Available means," in its broadest signification, includes money as well as notes, bills of exchange, &c.; but in its ordinary sense, especially when used as contra-distinguished from money as it clearly is in the assignment under consideration, it must be understood as meaning notes, bills of exchange, drafts, stocks and other choses in action.   But these are not money.   They are only rendered available or turned into money by paying the necessary discount, and this is not always a fixed rate, but depends upon the place where the exchange is to be made and the state of the market at the time of the transfer.   Webster defines the noun "means" as follows, viz: "Income, resources or estate."   Qualified by the adjective available, it must be

held to include all that numerous class of securities which are known in the mercantile world as representatives of value easily convertible into money, but not money.   With this view of the meaning and intent of the term " available means," I have no doubt that the trustees under this assignment would be authorized to sell all or any portion of the assigned property on credit, and take in payment notes, bonds, mortgages or other available means, even if they would not be authorized to exchange it for other property. The language here used should be taken in its ordinary signification, and each word should have its usual force.

*219]      *" Available means," among mercantile men, is a term well understood to be anything which can readily be converted into money.   But it is not necessarily nor primarily money itself.   Nor could it have been so understood by the assignor in this case.   For if it had been, there would have been no necessity of adding after " money," " or available means."   To the very able and conclusive reasoning of Judge Gardiner in the case of *Nicholson* v. *Leavitt*, showing that if a trust to sell on credit is valid, the court has no power to convert the securities thus taken into money, I shall not attempt to add.   It was concurred in by the whole court, and met the unanimous approbation not only of the profession but of all that portion of the community that is not interested in having the time of payment of all debt postponed beyond the period fixed by the agreement of the parties.

The principle of the case of *Kellogg and others* v. *Slauson and others* (1 *Kernan*, 302), may, at first sight, be supposed to sustain the assignment now under consideration.   But a close examination will show that the court held that though the assignees were, by the language of the instrument under consideration in that case, vested with a discretion to dispose of the property " on such terms as in their judgment might be best for the parties concerned, and convert the same into money," that this did not necessarily nor by

fair implication, authorize them to sell on credit. On the contrary, the "terms," &c., were held to apply to the manner of sale as public or private, in large or small quantities, &c., while the direction to "convert the same into money" contained at the end of the sentence, was held to limit the disposition of the property to a sale for cash. The case in this view does not in any manner conflict with that of *Nicholson* v. *Leavitt*, nor did the court mean to disturb the salutary rule there established. This is evident from the fact that the learned judge who delivered the opinion of the court in *Kellogg* v. *Slauson, cited; Woodburn* v. *Mosher* (9 *Barb. S. C. R.* 255), and *Murphy* v. *Beil* (8 *How. P. R.* *468), where it was held that a permission to the as- [*220 signees to convert the assigned estate into money, " within such convenient time as to them should seem meet," avoided an assignment, because it implied an authority to sell on credit.

The true rule to be observed is this : An insolvent debtor may make an assignment of all his estate to trustees to pay his debts with or without preferences; but such assignees are bound to make an immediate application of the property. And any provision contained in the assignment which shows that the debtor, at the time of its execution, intended to prevent such immediate application will avoid the instrument, because it shows that it was made with "intent to hinder and delay creditors in the collection of their debts." Such an intent expressed in the instrument or proved *aliunde*, is fatal alike by the language of our statute and the well settled adjudications of the English and American courts. The assignment of Clark Tillinghast, as we feel bound to interpret it, being obnoxious to this objection, the judgment of the supreme court must be reversed, and a new trial ordered.

All the judges concurred.

Judgment accordingly.